BONE v. STATE.

In Banc. June 13, 1949.

No. 37124. (41 So. (2d) 347)

Homer **W. Pittman** and **E. C. Barlow,** for appellant.

**R. O. Arrington,** Assistant Attorney General for appellee.

**Montgomery, J.**

This is an appeal from a judgment of the Circuit Court of Lincoln County, Mississippi, wherein the appellant, Luther Calvert Bone, was convicted on a charge of assault and battery with intent to kill and murder, and by the court sentenced to serve a term of ten years in the state penitentiary.

On the morning of February 15, 1948, at about 2:30 A.M. while Policemen Brister and Watts of the Brookhaven police force were making their round in Brister's private car containing no designation as a police car and while said officers were dressed in blue serge suits and wearing police caps, they noticed two men at Lofton's store on Whitworth Avenue in Brookhaven. Their suspicions were aroused as the men appeared to be either tampering with the lock on the store door or else taking a drink. The officers determined to check upon them and the men then walked on down Whitworth Avenue to the Brookhaven Bank corner, and there turned the corner. The officers drove on down the street, also turning the corner and pulled up in front of the Royal Cafe. The two men came almost that far and then turned and went back and started . running. When they did, Officer Watts jumped out of the car and ran after them. Officer Brister

turned his car in the street and went back to the bank corner, passed Officer Watts, passed the men before they got to the other end of the block on Whitworth Avenue, and parked his car. About that time one man started towards Officer Watts and the other started towards Officer Brister. About the time the man starting towards Officer Watts had gotten about 75 feet from him he opened fire on Watts and Watts returned the fire. Watts' assailant jumped into the stairway going up into the Federal Land Bank building and fired a few rounds at Officer Watts and Watts returned the fire. He stepped out from the Federal Land Bank stairway and ran a little farther down the street and jumped in Perkins Gift Shop offset there. Watts walked out in the street so he could shoot around the glass and Watts and his assailant fired a round or two and then Watts' assailant broke and ran up towards him. He got to the end of the sidewalk, threw his gun on Watts and it snapped a time or two. He cursed his gun and said, ''I will beat your God d— brains out,'' and moved in on Watts. They scuffled around, Watts trying to keep him from hitting him in the head with his gun. Watts' hand was beaten up, his fingernails were blue and subsequently two of them came off. Watts' assailant had on a brown hat and overcoat, the hat fell off, and while they were scuffling the other man, who had been engaged in an altercation with Officer Brister, came up and shot Watts in his left leg and he fell down. In the shooting that had preceded, Watts' first assailant shot him in the right leg. Both officers got a good look at Watts' assailant under the street lights, which were then burning, and both subsequently identified Luther Bone, the appellant, as Watts' assailant. There was no uncertainty in the identification and both officers were positive in their identification of Bone as the man who had assaulted Officer Watts.

It is assigned as error, first, that the court erred in refusing to grant a change of venue. When the motion was made the State introduced twelve witnesses,

being officers of Lincoln County, members of the Board of Supervisors, and citizens from the different parts of the County, all testified that there was no aroused popular feeling against Bone and no public sentiment against him, and that he could get a fair trial in Lincoln County. The court overruled the motion for a change of venue, and properly so. We find no merit in this assignment.

After the motion for a change of venue was overruled the appellant moved to continue the trial until the September term, and this motion was sustained and the trial continued until the next term of the court to be held in September, 1948. At that term of the court the defendant was permitted to withdraw his plea of not guilty and file a demurrer to the indictment, which demurrer was overruled. The action of the court in overruling the demurrer is assigned as error.

The indictment in this case was returned under Section 2011 of the Mississippi Code of 1942, and it meets all of the requirements of the statute. It was held in State v. May, 147 Miss. 79, 112 So. 866, that an indictment charging shooting at another with intent to kill and murder and alleging that shooting was done unlawfully, with malice aforethought, feloniously and wilfully with intent to kill and murder, is sufficient to charge that shooting was done with felonious intent to kill and murder and properly charges an offense of assault and battery with intent to kill and murder.

The indictment in the case at bar is identical, in substance, with the indictment that was upheld in Wexler v. State, 167 Miss. 464, 142 So. 501. The action of the trial court in overruling the demurrer was correct and there is no error in the court's overruling the demurrer to the indictment.

It is next assigned as error that the court refused to grant a continuance on the ground that certain witnesses were absent. It appears that one of the witnesses appeared during the trial and testified, another of the witnesses was in California and the third was in Texas. Appellant is not in position to complain of any error here

as he did not comply with the rule governing continuances and follow this up on his motion for a new trial with affidavits as to what the witnesses would swear to, or giving a reasonable explanation of why the affidavits had not been procured. It was held in Lamar v. State, 63 Miss. 265, that to entitle a defendant to a continuance because of the absence of a witness, he must promptly have the witness summoned; must ask for an attachment if the witness has been summoned and failed to appear; must apply for a continuance before venire drawn, and set out in his affidavit the name and residence of the absent witness and the facts expected to be shown by him, and also show what steps have been taken to secure his attendance; must negative the idea that he is absent with defendant's consent or procurement, and give the cause of the witness' absence, if it be known. If the continuance be refused, defendant must sue out the proper process for his witness, and when the case is called for trial must again apply for a continuance, making such changes in his affidavit as the conditions then existing require. If still refused, he should persist in using the process of the court to compel the attendance of the witness on the trial, and if convicted, on the hearing of a motion for a new trial. If the appearance of the witness can not be had, his ex parte affidavit must be presented to the court, if it can be obtained, on the hearing of the motion for a new trial. See also Ogden v. State, 174 Miss. 119, 164 So. 6; Ware v. State, 133 Miss. 837, 98 So. 229.

 It is also assigned as error that the court refused to excuse for cause Jurors Ratliff and Case. It appears from the record that the appellant used only five peremptory challenges and consequently is not in a position to complain since his peremptory challenges were not exhausted. Shubert v. State, 66 Miss. 446, 6 So. 238; Cummins v. State, 144 Miss. 634, 110 So. 206; Richardson v. State, 153 Miss. 654, 121 So. 284.

It is next assigned as error that the court permitted testimony as to former burglaries over the objection of the defendant. It appears from the record in

the case that this testimony was introduced to show cause for watchfulness and alertness on the part of the officers and without attempting in any way to show that the defendant was connected with any of the former burglaries. The court stated to the jury that the testimony was admitted for the sole reason of showing why the officers were on the alert and not to show that the defendant was the perpetrator of any of those offenses and that the jury should so consider it for that purpose alone. This testimony was competent and the court committed no error in receiving it.

It is next assigned as error that the court erred in permitting the evidence of Charles Bahin, chief of police of Natchez, regarding pictures of "known criminals." ██ This testimony got into the record in the following manner. Bahin was on the witness stand and he was asked the question "State what, if anything, you had in your pocket with reference to pictures." He answered, "I had around eight pictures in my pocket of known criminals. Q. Eight pictures in your pocket of known criminals? A. That had been in this vicinity." The record shows that the appellant made no objection to this testimony as to "known criminals" that had been volunteered by the witness and not in response to the question. It also shows that he made no objection to the question of Mr. Cohn regarding the eight pictures of "known criminals" asked the witness after he had volunteered the information of "known criminals." Five questions and answers then intervened in regard to these pictures without referring to them as pictures of "known criminals," and then Mr. Pittman asked that the jury retire and after they had retired moved the court to enter a mistrial for the reason that such testimony tends to put in issue the character of the defendant at a time when the defendant has not testified and such testimony is prejudicial, incompetent and inadmissible. The court overruled the motion for a mistrial and the jury was returned to the courtroom. The court then stated to the jury, "Gentlemen of the jury,

the witness stated the kind of men whose pictures were brought. This was an improper statement, improperly made, not responsive to the question from counsel for the state, and the jury will wholly disregard it . . . as to the kind of men whose pictures were brought to Brookhaven by this witness."

It will be noted that no objection was made to this testimony as it was coming in from the witness. It was only after all the testimony was in and its full effect apparent that appellant objected and moved for a mistrial. If counsel had objected timely the court would no doubt have sustained his objection. Surely the court should not be put in error for failing to exclude evidence to which there is no objection. The motion for a mistrial was overruled and the jury was instructed not to consider this error. This was all the court could do. Surely he should not have entered a mistrial and granted a continuance for the term. Counsel had already made a motion for a continuance at that term and the motion had been properly overruled by the court. The State was entitled to have the case tried at that term and the court can not be put in error for failing to exclude evidence to which there is no objection. The motion for a new trial did not reach the question of the admissibility of the evidence, that admissibility could be reached only by a timely objection. In Jackson v. State, 163 Miss. 235, 140 So. 683, 684, it was held that in the absence of a specific objection in the lower court the point could not be raised in the Supreme Court for the first time. The court saying, "Error in the admissibility of evidence can be predicated only on an objection thereto, specifically pointing out the infirmity therein." The motion for a new trial did not specifically reach the admissibility of the evidence. This could have been reached only by a timely objection and the objection not having been made timely no error in its admissibility can be raised in the absence of an objection thereto specifically pointing out the infirmity therein.

It is further assigned as error that the court erred in overruling the motion to exclude the evidence offered on behalf of the State and directing a verdict of not guilty. We have examined the evidence in this case and are satisfied that no fair jury intent upon ascertaining the truth could have done other than return a verdict of guilty upon the evidence that was presented to it. There is no merit in this assignment.

It is next assigned as error that the court erred in granting Instruction No. 1 for the State. This instruction reads as follows:

"The Court instruct the Jury for the State that if you believe from the evidence in this case, beyond all reasonable doubt that the Defendant did wilfully, unlawfully, feloniously and of his malice aforethought, at the time and place complained of, commit an assault and battery upon the person of one Leroy P. Watts, a human being, with a certain deadly weapon, to-wit: a pistol, by then and there shooting and wounding the said Leroy P. Watts with said weapon, with the felonious intent to kill and murder the said Leroy P. Watts, then it is your sworn duty to find the Defendant guilty as charged."

Appellant argues that the instruction is erroneous in that the jury was not instructed upon the essential elements of the crime of murder and that no malice, motive or deliberate design is shown by the proof.

There is no question involving unlawful arrest in this case. At the time Bone fired upon Watts, Watts had not undertaken to arrest him and had not expressed to Bone any such purpose or intent. Bone fired upon Watts at a time when it is not shown by the evidence in this record that he had reasonable cause to believe that he was in danger of death or great bodily harm at the hands of Officer Watts and his firing upon Watts was without justification in law.

This court held in Martin v. State, 163 Miss. 454, 142 So. 15, with reference to instruction upon assault and battery with intent to kill and murder, that an instruction

defining the crime with which defendant is charged is sufficient if it sets forth all of the elements of the crime.

In Canterbury v. State, 90 Miss. 279, 43 So. 678, there was involved an assault and battery with intent to kill and murder. Only two instructions were given for the State, neither of which define the crime of murder. The majority of the court held that these instructions were lawful and upheld the conviction in the lower court. Judge Calhoun dissented and the dissenting opinion of Judge Calhoun gave rise to the belief on the part of some of the members of the bar that it is necessary in this class of cases to define by instruction the essential elements of the crime of murder. This court had never so held. In Bridges v. State, 197 Miss. 527, 19 So. (2d) 738, error was predicated on the failure of the instructions for the State to define the term "murder" used therein. The Court there called attention to the dissenting opinion in Canterbury v. State, supra, but declined to hold that the instructions there were erroneous for not defining the essential elements of the crime of murder and contenting itself to state that error, if any, could not be predicated because of instructions granted appellant following the language used by the State and some of which defined the crime of murder in the language of the statute.

In the case at bar the defendant did not request any instruction defining the essential elements of the crime of murder, which he could have done had he so desired. It is not incumbent upon the state to request such instruction and this court has never so held. The instruction complained of was proper and the court did not err in granting it.

 It is next complained that the court erred in granting Instruction No. 3 to the State. When this instruction was read to the jury the judge withdrew it and refused to permit the jury to consider it. This Court held in McLaurin v. State, 37 So. (2d) 8, not yet published in State Reports, that even though the instruction might be

erroneous it did not constitute reversible error when withdrawn by the State.

In the case at bar the accused's defense was an alibi and he got full instruction covering it.

It is next contended that the court erred in refusing the following instruction to the defendant:

"The court charges the Jury that the Defendant must be presumed to be innocent until his guilt is fully established by legal and competent evidence. The presumption of innocence prevails throughout the trial and it is the duty of the Jury, if it is reasonably possible, to reconcile the evidence with this presumption."

The refusal of this instruction was not error. The court has condemned this instruction repeatedly, the last instance being Carr, et al. v. State, 192 Miss. 152, 4 So. (2d) 887.

After a careful and painstaking investigation of the record in this case we are satisfied that no prejudicial error was committed by the court below in the trial of the defendant and his subsequent conviction, and that the judgment of the lower court should be affirmed.

Affirmed.