ISHEE, J.,
for the Court:
¶ 1. Fred’s Discount Stores of Tennessee, Inc. (Fred’s) was found liable for negligence after one of its patrons, Jesse Pratt (Pratt), was injured after slipping on a plastic grocery sack on the floor near a *822 checkout stand. The jury awarded Pratt $25,000 for her injuries.
¶ 2. Fred’s now appeals the verdict, arguing six issues. Because two of the issues involve the same subject matter, we have combined them. Fred’s asserts that the trial court erred by (1) refusing to grant a directed verdict in its favor; (2) refusing to grant its motion for a judgment notwithstanding the verdict (JNOV); (3) refusing to grant a new trial based on the court’s denial of placing medical records into evidence that showed Pratt had a preexisting condition to her left knee; (4) refusing to admit Pratt’s deposition testimony as part of Fred’s case-in-chief; and (5) refusing to grant a mistrial based on improper comments of Fred’s counsel in closing arguments. We find merit to issue three. Therefore, we affirm in part, and reverse and remand in part for further proceedings consistent with this opinion.
STATEMENT OF FACTS
¶ 3. On December 20, 2003, Pratt slipped and fell on a plastic shopping bag while checking out of a Fred’s discount store in Greenwood, Mississippi. After the fall, Pratt sat on a bench at the store for approximately ten minutes, complaining that she was in pain. The store manager gave her water and aspirin. Pratt then left Fred’s and continued shopping at a local grocery store. Later that day, she went to the emergency room, complaining of severe pain in her left knee and shoulder.
¶ 4. Pratt claimed she suffered severe injuries to her left knee and shoulder and filed suit against Fred’s, stating that her injuries were the proximate result of Fred’s failure to maintain its premises in a reasonably safe condition for its invitees.
¶ 5. At trial, John Beck, an eyewitness to the incident, testified that he was standing behind Pratt in the checkout line and saw her slip and fall on a plastic shopping bag. He also stated that he saw several plastic shopping bags on the floor prior to Pratt’s fall. Pratt testified that after she fell, she saw the cashier pick the shopping bags up off the floor and throw them in the garbage.
¶ 6. Dr. Walter Moses, Pratt’s treating physician at the emergency room, testified that Pratt suffered an anterior cruciate ligament tear, medial meniscus tear, and a tear to the lateral meniscus in her left knee. He stated that Pratt’s injuries were caused by her fall at Fred’s and striking her knee, and not caused by arthritis.
¶7. Pratt had been previously treated for back pain and arthritis in her right knee at the Greenwood Orthopedic Clinic, and had complained about pain in both knees during visits to the clinic in 2001 and 2003. She received several treatments to both knees, including injections into the knees before her accident at Fred’s. However, these records relating to Pratt’s medical treatments prior to the fall were not allowed into evidence at trial.
¶ 8. In her deposition which was read aloud at trial, Gayle Prewitt, a manager at the Fred’s store in Winona, stated that according to Fred’s safety policies, all employees at Fred’s are responsible for insuring that the aisles are clean and clear of debris. She also read from the employee safety policy, which instructed that all employees were responsible for “inspecting the store constantly to be aware of the physical hazards which could cause physical injury or property damage.” In addition, the employee safety policy stated that “every employee is responsible for reporting unsafe conditions to the store manager.”
¶ 9. Prewitt admitted that a plastic bag on the floor would be considered an unsafe condition and a tripping hazard. She fur *823 ther testified that the plastic shopping bags were required to be kept in a bag well by the cashier, and not on the floor, and that only Fred’s employees handled the plastic bags. Pratt also entered into evidence a Fred’s document that instructed employees to “keep all aisles clear. Do not have tripping hazards.”
¶ 10. In the closing argument, Pratt’s attorney referenced the fact that Fred’s failed to call a doctor as its witness to testify as to Pratt’s medical records. Fred’s attorney objected after the close of the arguments, and the court sustained the objection. The court further advised the jury that “any objection or comments as to who counsel opposite calls or does not call is inappropriate.” A jury found Fred’s liable for negligence and awarded Pratt $25,000 for her injuries.
DISCUSSION
I. Directed Verdict
¶ 11. Fred’s argues that it was entitled to a directed verdict because Pratt failed to present evidence that Fred’s was negligent. Fred’s claims that Pratt did not prove that an employee of Fred’s caused any plastic bags to be on the floor, or the plastic bags were on the floor for a sufficient amount of time for any employee to have known about it or to have constructive knowledge that the bags were on the ground.
¶ 12. On appeal, this Court employs a de novo standard of review for motions for a directed verdict. Ducksworth v. Wal-Mart Stores, Inc., 832 So.2d 1260, 1262 (¶ 2) (Miss.Ct.App.2002). We consider the evidence in the “light most favorable to the non-moving party and give[ ] that party the benefit of all favorable inferences that may be reasonably drawn from the evidence presented at trial.” Id. (citation omitted). “If those facts and inferences, so viewed, can be said to create a question of fact from which reasonable minds could differ, then the matter should be submitted to the jury, and the directed verdict should not be granted.” Id.
¶ 13. Fred’s asserts that Pratt’s testimony was inadequate to substantiate proof of negligence because Pratt merely testified that she was in the store, fell, and thought that she had slipped on a plastic bag. She did not know how the plastic bag came to be on the floor or how long it had been there. Fred’s claims that its duty was to discover the bags in a reasonable amount of time and clean up the bags, if its employees did not cause the bags to be on the floor.
¶ 14. Pratt- testified that she slipped on a plastic shopping bag in the checkout aisle. Beck testified that he witnessed Pratt’s fall, which he testified was a result of the Fred’s plastic shopping bag being in the aisle. Dr. Moses, Pratt’s treating physician, testified that the injuries Pratt suffered were directly related to Pratt’s fall. Fred’s did not provide evidence to rebut any of the testimony.
¶ 15. Fred’s own representative, Prew-itt, admitted in her testimony that the plastic shopping bag in the aisle was a dangerous condition. She also admitted that the plastic shopping bags are only handled by Fred’s employees and should not be on the floor of the store. In her deposition, Prewitt read aloud a portion of Fred’s employee safety policy, which stated that all employees were responsible for “inspecting the store constantly to be aware of the physical hazards which could cause physical injury or property damage.”
¶ 16. Based on the testimony and evidence presented at trial, we find that a reasonable jury could conclude that the plastic shopping bag on the floor in the *824 checkout aisle was present due to Fred’s negligence. While there was no testimony which provided an account as to how the bags got on the floor, Fred’s representative testified that the only ones in the store who handled Fred’s bags were the employees. The bags were kept in a well by the cashier’s checkout. Upon reviewing the testimony in the light most favorable to Pratt, the non-movant, we find that a reasonable inference may be drawn to support the jury’s finding that Fred’s caused the bags to be on the floor. Therefore, we do not find that the circuit court erred in denying a directed verdict for Fred’s.
II. Judgment Notwithstanding the Verdict
¶ 17. Fred’s argues that it is also entitled to a JNOV or a new' trial because there was no proof that Fred’s caused a plastic bag to be on the floor.
¶ 18. A motion for a JNOV “tests the legal sufficiency of the evidence supporting the verdict.” Goodwin v. Derryberry Co., 553 So.2d 40, 42 (Miss.1989) (citations omitted). We consider the evidence “in the light most favorable to the party against whom the motion has been made, disregarding any evidence on the part of the movant, which is conflicting.” Bruner v. Univ. of S. Miss., 501 So.2d 1113, 1116 (Miss.1987). A JNOV is not proper “[i]f there is credible evidence from which to draw reasonable inferences, supporting the jury’s verdict.” Id. (citations omitted).
¶ 19. Pratt was an invitee of Fred’s. As such, Fred’s, the business owner, owed Pratt, a business invitee, a “duty of ordinary care to keep the business premises in a reasonably safe condition.” Treadwell v. Circus Circus Miss., Inc., 942 So.2d 221, 222 (¶ 6) (Miss.Ct.App.2006) (citation omitted). Fred’s also had a duty to warn Pratt of any dangerous conditions that are not obvious to the invitee and of which Fred knew or through the exercise of reasonable care should have known. Id.
¶ 20. In order to prevail in this premises-liability case, Pratt must have shown one of the following that: (1) a negligent act by Fred’s caused her injuries, or (2) Fred’s possessed actual knowledge of the dangerous condition yet failed to warn of it, or (3) a dangerous condition existed for such a length of time that Fred’s should have known of the existence of the dangerous condition so that constructive knowledge of the condition could be imputed to Fred’s. Rod v. Home Depot USA, Inc., 931 So.2d 692, 694 (¶ 10) (Miss.Ct.App.2006).
¶ 21. As discussed above, a witness testified that the shopping bags were on the floor when Pratt fell. Pratt testified that she slipped on a plastic shopping bag in the checkout aisle, which was corroborated by an eyewitness who saw her fall. Pratt’s physician testified that Pratt’s injuries were directly related to her fall. In addition, Fred’s representative admitted that the plastic shopping bags are only handled by Fred’s employees and should not have been on the ground.
¶ 22. Thus, we find that there was sufficient evidence from which the jury could draw reasonable inferences to support the verdict. Accordingly, this issue is without merit.
III. Medical Records
¶ 23. Fred’s also argues that it is entitled to a new trial because the trial court deprived it of the opportunity to submit evidence to show that Pratt suffered from a preexisting condition to her left knee. Fred’s filed a motion for a new trial, asserting the medical-records error, which the circuit court denied.
*825 ¶ 24. The trial court has discretion as to whether to grant a motion for a new trial. Lift-All Co. v. Warner, 943 So.2d 12, 15 (¶ 11) (Miss.2006). This Court “will only reverse the denial of a motion for a new trial when the trial court has abused its discretion.” Davis v. Wal-Mart Stores, Inc., 724 So.2d 907, 910 (¶ 11) (Miss.1998) (citation omitted). “A motion for a new trial may be granted in several circumstances including where faulty jury instructions have been given, where the verdict is against the overwhelming weight of the evidence, or where bias, passion, or prejudice have tainted the jury’s verdict.” Id. (citations omitted). In addition, we will not reverse a decision on the admission or exclusion of evidence “unless the error adversely affects a substantial right of a party.” United Servs. Auto Ass’n v. Lisanby, 47 So.3d 1172, 1179 (¶25) (Miss.2010).
¶ 25. Fred’s asserts that the medical records were relevant to show that Pratt’s preexisting condition may have accounted for some or all of her alleged pain. Evidence is relevant if it has “any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.” M.R.E. 401. The Rule favors the admissibility of evidence if the evidence has any probative value. Burnwatt v. Ear, Nose & Throat Consultants of N. Miss., 47 So.3d 109, 114 (¶ 21) (Miss.2010).
¶ 26. The circuit court did not admit Pratt’s medical records from the Greenwood Orthopedic Clinic because the court stated that the records were not relevant. Pratt claimed injury to her left knee and shoulder at Fred’s. The proposed exhibit by Fred’s consisted of records of prior treatment to Pratt’s right knee, although on one visit in 2001, the records noted that Pratt had “increasing pain in both knees due to arthritis.” During visits on May 21, June 5, and June 12, 2003, Pratt received injections into each knee. She fell at Fred’s on December 20, 2003.
¶ 27. Although the court did not allow these medical records to be admitted into evidence, the jury was aware of Pratt’s preexisting conditions in her left knee. In her testimony, Pratt stated that she had problems with her left knee prior to her fall at Fred’s. Fred’s attorney also addressed Pratt’s preexisting left knee problems in his closing argument. And Dr. Moses, Pratt’s physician, testified that Pratt’s injuries were caused by the fall at Fred’s, and not by arthritis.
¶ 28. However, we find the medical records were relevant to determine the issue of damages; therefore, the circuit court abused its discretion by not allowing the medical records into evidence. Accordingly, we reverse and remand this matter to the circuit court for a new trial to evaluate the limited question of damages consistent with the findings of this opinion.
IV. Admission of Deposition Testimony
¶ 29. Fred’s remaining argument is that the circuit court erred by not allowing it to introduce portions of Pratt’s deposition to the jury. According to Mississippi Rule of Civil Procedure 32(a)(1), “[a]ny deposition may be used by any party for the purpose of contradicting or impeaching the testimony of [a] deponent as a witness, or for any other purpose permitted by the Mississippi Rules of Evidence.” However, it is within the court’s discretion to admit such testimony. Figueroa v. Orleans, 42 So.3d 49, 52 (¶ 8) (Miss.Ct.App.2010). As stated previously, only errors affecting a substantial right merit reversal. Lisanby, 47 So.3d at 1179 (¶ 25).
¶ 30. Fred’s opened its case-in-chief by attempting to submit into evidence Pratt’s deposition from February 6, 2007, after *826 Pratt had already testified as a live witness in the trial. Fred’s first attempted to read Pratt’s entire deposition into the record, to which Pratt made an objection that the court sustained. The court ruled that since Pratt was present as a live witness, Fred’s could have used the deposition to cross-examine or impeach her. Fred’s had the opportunity during Pratt’s live testimony to bring out any discrepancies between her deposition and her testimony given during the trial. Fred’s failed to do so.
¶ 31. We find that the circuit court properly permitted Fred’s to use the deposition testimony to contradict or impeach Pratt during cross-examination, which is consistent with Rule 82(a)(1) of the Mississippi Rules of Civil Procedure. Yet Fred’s failed to avail itself of this opportunity. Instead, without giving any explanation of the deposition’s relevance or its probative value, Fred’s waited to introduce the deposition until after Pratt had left the stand and rested her ease-in-chief.
¶ 32. While Rule 32(a)(1) of the rules of civil procedure does not expressly prohibit the introduction of a deposition if the person is a live witness at trial, we find in this instance that admitting the deposition, without any clarification of its relevance, would be improper. We are further concerned that allowing such a practice — i.e., permitting a party to cure its failure to examine or cross-examine a live witness properly by later attempting to admit a prior deposition into the record — would have the prejudicial effect of either bolstering a witness’s testimony or confusing the jury. Accordingly, this issue has no merit.
Y. Comments Regarding Failure to Call a Witness
¶ 33. Fred’s final argument is that a mistrial should have been granted when Pratt’s attorney, in his closing argument, commented on Fred’s failure to call a medical doctor to rebut Pratt’s medical records after she fell. Fred’s relies on Holmes v. State, 537 So.2d 882, 885 (Miss.1988), to assert that commenting about a party’s failure to examine a particular witness, when the witness is available to both parties, is not a proper subject for comment by attorneys before a jury.
¶34. An improper comment on failure to call a witness does not require reversal unless “the natural and probable effect of the improper argument ... creates an unjust prejudice against the opposing party resulting in a decision influenced by the prejudice so created.” Eckman v. Moore, 876 So.2d 975, 986 (¶38) (Miss.2004) (quoting Davis v. State, 530 So.2d 694, 701-02 (Miss.1988)).
¶ 35. In his closing argument, Pratt’s attorney made the following comments:
I have gone back over all of the evidence, and I want you to consider the evidence that was opposed to the evidence that we presented because there wasn’t any evidence. There was none. There was an incident report that had Ms. Pratt’s address on it and some medical records. They didn’t have a doctor to come up here and testify to those records. There was no evidence put on that rebutted any point that we made today. I want you to consider that when you are back there in deliberations.
After the closing arguments, Fred’s attorney objected to the comments made by Pratt’s attorney in his closing argument. The trial court sustained the objection and instructed the jury to disregard the statements made about Fred’s failure to call a witness to rebut Dr. Moses’s testimony, stating that those statements were “inappropriate.”
¶ 36. We find that the attorney’s comments were cured by the circuit court’s *827 instruction, and as such, constitute harmless error which does not warrant reversal.
CONCLUSION
¶ 37. We find that Fred’s assignments of error regarding the circuit court’s denial of a directed verdict and JNOV, and the court’s refusal to admit Pratt’s deposition into evidence, as well as the court’s refusal to grant a mistrial based on Pratt’s attorney’s statements in his closing argument are without merit. However, we find that the court’s refusal to admit Pratt’s previous medical records regarding the preexisting condition in her left knee constitutes reversal on the limited issue of a determination of damages. Accordingly, we affirm this case in part and reverse and remand in part for a new trial on the issue of damages.
¶ 38. THE JUDGMENT OF THE CIRCUIT COURT OF LEFLORE COUNTY IS AFFIRMED IN PART AND REVERSED AND REMANDED IN PART FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE DIVIDED EQUALLY BETWEEN THE APPELLANT AND THE APPEL-LEE.
LEE, C.J., IRVING, P.J., MYERS AND RUSSELL, JJ., CONCUR. MAXWELL, J., CONCURS IN PART AND IN THE RESULT WITH SEPARATE WRITTEN OPINION JOINED BY GRIFFIS, P.J., BARNES AND ROBERTS, JJ., AND JOINED IN PART BY RUSSELL, J. CARLTON, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION.